CROWTHER et al. v. FIDELITY INSURANCE, TRUST & SAFE-DEPOSIT CO. et al.

(Circuit Court of Appeals, Fourth Circuit.    February 1, 1898.)

No. 240.

1. VALIDITY OF STATE STATUTE—TITLE OF ACT.
    The Virginia act of March 21, 1877, was entitled "An act to secure the payment of wages or salaries to certain employés of railway, canal, steamboat, and other corporations," while the act itself referred only to railroad, canal, or "other transportation companies." *Held* that, if the words "other corporations" were construed to mean corporations of every class, the title would not express the object of the act, and it would be obnoxious to article 5, § 15, of the state constitution.

2. SAME—CONSTRUCTION.
    *Held*, further, that, to save the act, the words "other corporations" must be construed to mean those of the same class as the ones enumerated.

3. SAME.
    While the title of the act referred only to "wages or salaries," the body of it related also to supplies necessary for the operation of the corporations named; and the act of April 2, 1879, while entitled "An act to amend and re-enact" the act of 1877, included also mining and manufacturing corporations. *Held*, that both acts must be controlled by the title of the first, and that the second act, in so far as it related to supplies, and to corporations other than transportation corporations, was unconstitutional and void.

4. SAME—FEDERAL COURTS—STATE DECISIONS.
    Whether statutes of a state have been duly enacted in accordance with the requirement of the state constitution is not a federal question, and the decision of the state courts as to what are the laws of the state is binding on the courts of the United States.

5. IMPAIRING OBLIGATION OF CONTRACT—VESTED MORTGAGE LIEN.
    The provision of Code Va. § 2485 (adopted in 1887), providing that persons furnishing certain supplies to mining or other specified companies shall have a lien prior to mortgages executed since March 21, 1877, is inoperative to displace the lien of a mortgage executed in 1881, which, at that time, became by contract a vested first lien; for to give it such an effect would be to impair the obligation of the contract.

Appeal from the Circuit Court of the United States for the Western District of Virginia.

John E. Roller, for appellants.

J. S. Clark and John T. Harris, Jr., for appellees.

Before SIMONTON, Circuit Judge, and BRAWLEY and PURNELL, District Judges.

SIMONTON, Circuit Judge. This case comes up on appeal from the circuit court of the United States for the Western district of Virginia. The Shenandoah Iron Company, a manufacturing corporation of the state of Virginia, became insolvent. The trustee of a first mortgage on the property of the company filed a bill for the foreclosure thereof, under which receivers were appointed, and on a full hearing obtained its decree for sale. Creditors were called in, who submitted proofs of their claims to a special master appointed by the court. The master made his report. The mortgage bears date April 1, 1881, and secures bonds bearing the same date to the amount of $500,000. In his report the master stated the claims in classes according to his views of their priority. Among these were certain claims for labor and supplies which existed against the defendant company prior to the appointment of the receivers, but subsequent in date to the mortgage. The claimants insisted that these claims had priority over the mortgage debts, and that the proceeds of sale should be applied to their extinction before any part of the mortgage debt could be paid. They rest their position on the acts of the general assembly of the state of Virginia passed in 1877 and 1879, and on section 2485 of the Code of Virginia. The circuit court overruled this claim of priority, holding that the statutes of Virginia were unconstitutional and void, and that section 2485 of the Code of Virginia, as to these claims, under the circumstances of this case, was also void. Exceptions were taken, and assignments of error made. The question now to be decided is this: As the law of Virginia stood at the date of the passage of the Code of 1887, had claims for labor or supplies against manufacturing companies a lien prior to the lien of an antecedent recorded mortgage?

On 21st March, 1877, the general assembly of Virginia passed an act entitled "An act to secure the payment of wages or salaries to certain employees of railway, canal, steamboat, and other corporations." The words of the act are:

"Be it enacted by the general assembly, that hereafter all conductors, brakesman, engine-drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, storekeepers, mechanics, or laborers, and all persons furnishing railroad iron, fuel and all other supplies necessary for the operation of trains and engines employed in the service of any railroad, canal or other transportation company, chartered under or by the laws of this state or doing business within its limits, shall have a prior lien on the franchises, the gross earnings, and all the real and personal property of said company, which is used in operating the same, for and to the extent of the wages or salaries contracted to be paid them by said company." Acts 1877, p. 188.

It will be noted that the title of this act speaks of "railway, canal, steamboat, and other corporations." The act itself, the enactment which is the law, confines its operation to "railroad, canal, or other transportation companies." The constitution of Virginia (article 5, § 15) provides that "no law shall embrace more than one object, and that shall be expressed in the title." The object of this act clearly is to protect employés of railroad, canal, and other transportation companies. And if we give the title the broad signification claimed for it by the appellants, and make the words "other corporations" mean corporations of every class as well as corporations for trans-

portation purposes, the title of the act would not express its object, and the act would be obnoxious to the constitutional requirement. But the construction should be adopted "ut res magis valeat quam pereat," and to save this act we must conclude, as the court below did, that the words "other corporations" in this title must be construed by the maxim "Noscitur a sociis," and hold that it means corporations ejusdem generis. And this manifestly is the legislative construction of the act by the general assembly of Viginia. On 2d April, 1879, an act was passed entitled "An act to amend and re-enact the first and second sections of an act approved March 21st, 1877, entitled 'An act to secure the payment of the wages or salaries to certain employees of railway, canal, steamboat and other transportation companies.'" The body of the act is as follows:

"Be it enacted by the general assembly, that hereafter all conductors, brakesmen, engine-drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, storekeepers, mechanics or laborers, and all persons furnishing railroad iron, engines, cars, fuel and all other supplies necessary for the operation of any railway, canal or other transportation company, or of any mining or manufacturing company, chartered under or by the laws of this state, or doing business within its limits, shall have a prior lien on the franchises, the gross earnings,and on all the real and personal property of said company which is used in operating the same, to the extent of the moneys due them by said company for such wages or supplies; and no mortgage, deed of trust, sale, conveyance or hypothecation hereafter executed of said property, shall defeat or take precedence over said lien; but it is expressly provided that the liens of the employees and officials aforesaid shall be prior to that of all other liens whatsoever, and shall be the first discharged." Acts 1879, p. 352.

Section 2 provides the mode of securing the lien provided for in the first section. It will be noted that while the title of this act declares that it is designed to amend and re-enact the first and second sections of the former act, the body of the act itself goes much further than this, and includes, in addition to the transportation corporations, mining and manufacturing corporations. Is this a compliance with the constitutional provision? It is not, unless it be held that the words "to amend and re-enact" meet the requisite of the constitution. But in Fidelity Insurance, Trust & Safe-Deposit Co. v. Shenandoah Val. R. Co., 9 S. E. 759, the court of appeals of Virginia, construing these same acts, does not hold the words quoted sufficient for this purpose. The title of the first act stated that its purpose was to secure the payment of wages or salaries to employés. The body of the act included supplies necessary for the operation of the corporations mentioned. The second act, as we have seen in the title, declares its purpose to amend and re-enact this section. The court, however, hold that, as the word "supplies" was not mentioned in the title of the first act, the omission was not cured by the second act, and that as to the lien for supplies both of the acts were unconstitutional and void. The language of the decision of the court clearly shows that both acts must be controlled by the title of the first act:

"The title is misleading and deceptive. It gave not the remotest intimation of the provisions of the act relied on here, which are foreign to the subject expressed in the title, and, to sustain the act in its entirety, would be, in effect, by judicial construction to eliminate from the constitution one of its most important provisions, or, at all events, to seriously impair its usefulness."

The conclusion of the court, after an able and elaborate discussion, is:

"In the light of these principles, there can be no reasonable doubt, we think, that so much of the act and the act amendatory thereof as is relied on in the present case is repugnant to the constitution, and therefore void."

This decision of the court of last resort of the state of Virginia, construing its own statutes and constitution, is of the highest authority in this court. Whether statutes of a state have been duly enacted in accordance with the requirement of the constitution of such state is not a federal question, and the decision of state courts as to what are the laws of a state is binding on the courts of the United States. Leeper v. Texas, 139 U. S. 462, 11 Sup. Ct. 577. The decision of the supreme court of a state as to the conformity of a statute to the state constitution is binding on the supreme court of the United States on writ of error. Railway Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114.

The appellant also relies upon section 2485 of the Code of Virginia, adopted in 1887, in these words:

"Sec. 2485. Lien of Employees, &c., of Transportation Companies, &c., on Franchises and Property of Company.—All conductors, brakemen, engine drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, storekeepers, mechanics, or laborers, and all persons furnishing railroad iron, engines, cars, fuel, and all other supplies necessary to the operation of any railway, canal, or other transportation company, or of any mining or manufacturing company, chartered under or by the laws of this state, or doing business within its limits, shall have a prior lien on the franchise, gross earnings, and on all the real and personal property of said company which is used in operating the same, to the extent of the moneys due them by said company for such wages or supplies; and no mortgage, deed of trust, sale, hypothecation, or conveyance, executed since the twenty-first day of March, eighteen hundred and seventy-seven, shall defeat or take precedence over said lien; provided, that if any person entitled to a lien, as well under section twenty-four hundred and seventy-five as under this section, shall perfect his lien given by either section, he shall not be entitled to the benefit of the other."

When these bonds were issued (1881) the mortgage securing them had by contract a vested first lien. Can this lien be devested by any act of the state of Virginia subsequent to the execution of the mortgage? In Railroad Co. v. Hamilton, 134 U. S., at page 299, 10 Sup. Ct. 546, the supreme court is emphatic in its declaration that the obligation of the mortgage contract cannot be impaired by any act of the mortgagor. And in Barnitz v. Beverly, 163 U. S. 118, 16 Sup. Ct. 1042, the same doctrine is applied to the operation of a state statute. The cases of Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, and Gross v. Mortgage Co., 108 U. S. 488, 2 Sup. Ct. 940, relied on by the appellant, neither overrule nor are in conflict with the law as laid down in 163 U. S. 118, 16 Sup. Ct. 1042, supra. These cases deal with a privilege belonging to the remedy forming no element in the rights that adhere in the contract. In the first of these cases—Ewell v. Daggs— the subsequent statute took away the right to avoid the contract given by the first statute. "This right," says the court, "is given by statute for purposes of its own, and not because it affects the merits of the obligation, and that whatever the statute gives under such circumstances, as long as it remains in fieri, and not realized by having passed into a completed transaction, may, by a subsequent statute,

be taken away." Judge Cooley sums it up tersely: "The right which the curative or repealing act takes away in such a case is the right of the party to avoid his contract, a naked legal right which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect." Cooley, Const. Lim. 378. In the case of Gross v. Mortgage Co., above cited, the case last quoted was affirmed. In the Gross Case a loan made by a foreign corporation could not be secured by a mortgage in Illinois. The United States Mortgage Company held such a mortgage. After its execution, the law of Illinois was changed, and such mortgages were validated. The court sustained this act. But no vested liens were interfered with, no contract obligation impaired, no rights infringed. A contract lien, binding on the conscience of all parties, was enforced. Inasmuch as to displace the vested lien of the mortgage of the Shenandoah Iron Company of 1881 by the retroactive language of section 2485 of the Code of Virginia would be to impair the obligation of that contract, it is void. The decree of the circuit court is affirmed, with costs.