UNITED STATES v. PHILLIPS.

District Court, N. D. New York. September 18, 1929.

496

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y., and Dean P. Taylor, Asst. U. S. Atty., of Troy, N. Y.

Irving K. Baxter, of Utica, N. Y., for defendant.

COOPER, District Judge. This is a motion to vacate a search warrant and suppress as evidence the intoxicating liquors seized thereunder. In his motion papers the defendant asserts that he is, and was at the times mentioned in the papers, the proprietor of the premises searched. He makes no allegation of ownership or of nonownership of the seized liquors, nor is there demand for their return to any person.

Upon the execution of the search warrant there were seized 7 hogsheads of malt beverage, 6 barrels of malt beverage, 15 barrels of beer, 27 half barrels of beer, 2 25-barrel vats, containing 30 gallons of beer mash, 1 electric motor, and 1 pump.

There is no question raised as to the description or identity of the premises named in the search warrant and searched thereunder. That instrument directs the search of a "one-story metal building, being the first building east of Ann street, on the north side of Carmichael street, in the city of Amsterdam, N. Y., and being directly in the rear of 340 Division street, Amsterdam." It was not a private dwelling in fact, and neither the affidavit nor search warrant describes it as such. The language of the affidavit, "reported to be occupied and *operated* by persons whose names are unknown to deponent," seems to negative any inference or suggestion that the premises to be searched was a private dwelling. The building was a garage.

The probable cause for the issue of the warrant is stated in the affidavit of the prohibition agent as follows: "That on the 30th day of October, 1928, and the 1st day of November, 1928, deponent was at said premises aforesaid. That at such times and place deponent smelled the odor of beer mash in the process of fermentation. That there was no one at said premises or connected with the same who has a permit from the United States government to manufacture or possess liquor at said premises. That for several years last past deponent has been familiar with spirituous and other liquors, by reason of drinking, tasting, smelling, and handling the same. That deponent smelled beer mash fermenting at said premises, and knows the same was of an alcoholic content of more than one-half of 1 per cent."

The main grounds of the motion are:

(1) That the statement in the affidavit that the prohibition agent affiant "smelled beer mash in process of fermentation" is a conclusion or guess, and not a statement of fact, and would not impart knowledge to any one as to the alcoholic content of such mash.

(2) That in any event such a statement would warrant only the conclusion that intoxicating liquors were being manufactured on the premises, which was not alleged, and not that intoxicating liquors are being sold or possessed for sale, as alleged in the search warrant.

(3) That the prohibition agent who made the affidavit on which the search warrant was issued obtained the information contained in his affidavit by an unlawful invasion of defendant's premises, and that the use of such evidence would violate the defendant's constitutional rights under the Fourth and Fifth Amendments to the Constitution. The last ground was added by amendment at the hearing on the motion.

In determining probable cause, the commissioner who issues the search warrant and the court may be presumed to know the scientific fact that fermenting beer mash produces a malt beverage containing more than one-half of 1 per cent. of alcohol by volume, and that the same must be dealcoholized to make it a cereal beverage containing less than one-half of 1 per. cent. of alcohol by volume, so that it might lawfully be manufactured and sold. If it were necessary to negative the possibility that the proprietor of the premises had a permit to manufacture cereal beverage, the affidavit does so.

It cannot be reasonably doubted that an experienced prohibition agent is able to tell fermenting beer mash by the odor. While the things seized may not be used to support a search warrant under which the seizure was made, the seizure in this case, made on November 3d, two days after the detection of the odor on the second visit, viz. November 1st, shows that the prohibition agent undoubtedly did smell fermenting mash. That such odor

is sufficient to warrant search, seizure, and arrest, as well as issue of search warrant, has ample authority. Vaught v. U. S. (C. C. A.) 7 F.(2d) 370; Schulte v. U. S. (C. C. A.) 11 F.(2d) 105.

The search warrant does not allege manufacture; it does allege possession of intoxicating liquors. Certainly intoxicating liquors were possessed at some stage, during as well as after, the completion of the manufacture. The defendant cannot succeed on his second ground.

The third ground is apparently defendant's main reliance. Where a search warrant, valid on its face, is controverted on the ground that there was no probable cause for the issuance thereof, the burden is on the person controverting the search warrant to show lack of probable cause. U. S. v. Napela (D. C.) 28 F.(2d) 898.

The defendant sought to establish such lack of probable cause by showing that the information obtained by the agent and stated in his affidavit was obtained in violation of the defendant's constitutional rights. On the hearing, the affiant prohibition agent was sworn as a witness by the defendant. He testified that he could not detect the odor from the street on which the searched building abutted, but that he did detect it from vacant, unfenced ground on the west side, toward the rear of the premises, where there were several screened windows; that one of the windows was broken, through which he could also see into the building, and could see some barrels and half barrels; that there were no fences or evidence of property lines anywhere near the searched building. He also testified that two or three nights before he raided a saloon nearby, and saw a truckload of beer come from the vicinity of the searched building, and was informed by some police officers that the truck had come from the searched premises. This was not in his affidavit, however, though it might well have been.

There was no entrance into the building. The odor was detected from the outside of the building. Whether or not the prohibition agent was on the land connected with the building or on some other land does not appear from the testimony of the agent and no other evidence was offered. If knowledge obtained by an entrance on the land connected with the building, constituting in civil law a trespass, were incompetent as evidence to support a search warrant, as defendant contends, he has failed to establish that the evidence stated in the affidavit was so obtained. But such evidence is not incompetent, as will be shown later herein.

This is not a case of an entrance by a federal agent into private premises without a search warrant, the search thereof and seizure of intoxicating liquors, and the arrest of the possessor. Such a search of and seizure in a private dwelling without a valid search warrant is unlawful, irrespective of the restrictions of the Prohibition Law. Agnello v. U. S., 269 U. S. 20, 23, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409.

Section 25, title 2, of the National Prohibition Act (41 Stat. 305, 315, c. 85; 27 USCA § 39), makes it unlawful to have or possess any intoxicating liquor intended for use in violation of the act, or which has been so used, and provides that no property rights shall exist in such liquor nor in the things used to manufacture such intoxicating liquor intended to be used in violation of the act. A search warrant may issue, and such liquor may be seized under the warrant, and ultimately destroyed.

The section limits the issue of search warrants for the search of private dwellings to cases where the affidavit shows that the private dwelling is being used for the sale of intoxicating liquors. Where the premises to be searched are not a private dwelling, it is necessary only to show probable cause for believing that intoxicating liquor is being unlawfully possessed therein.

There is a clear distinction between search without search warrants, by invasion of the defendant's premises for the sole purpose of procuring evidence against him, to be used in a criminal trial, and searches under search warrants issued upon probable cause, and seizures thereunder of articles which are contraband, and which no person may lawfully possess, and which the law requires shall be destroyed.

This distinction is well shown in Gouled v. U. S., 255 U. S. 298, 41 S. Ct. 261, 264, 65 L. Ed. 647 (decided in 1921). In that case certain incriminating papers, valuable only as evidence, and whose possession was not under the condemnation of law, were taken by stealth, in the absence of the defendant, and without search warrant. The question before the court was whether or not such evidence has been obtained in violation of the Fourth Amendment of the United States Constitution. The court, in the opinion written by former Justice Clark, says:

"Searches and seizures are as constitutional under the amendment when made under valid search warrants as they are unconstitutional, because unreasonable, when made without them—the permission of the amendment has the same constitutional warrant as

the prohibition has, and the definition of the former restrains the scope of the latter. All of this is abundantly recognized in the opinions of the Boyd [116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746] and Weeks [232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177] Cases, supra, in which it is pointed out that at the time the Constitution was adopted stolen or forfeited property, or property liable to duties and concealed to avoid payment of them, excisable articles and books required by law to be kept with respect to them, counterfeited coin, burglars' tools and weapons, implements of gambling 'and many other things of like character' might be searched for in home or office and if found might be seized, under search warrants lawfully applied for, issued and executed."

In Boyd v. U. S., 116 U. S. 616, 623, 6 S. Ct. 524, 528, 29 L. Ed. 746, the court said in part:

"The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ toto cœlo. In the one case the government is entitled to the possession of the property. In the other it is not. * * * So, also, the laws which provide for the search and seizure of articles and things which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coins, lottery tickets, implements of gambling, etc., are not within this category (unreasonable searches). Com. v. Dana, 2 Metc. (Mass.) 329."

The search warrant being valid on its face and issued upon probable cause, and the things directed to be searched for being forfeit to the government and liable to destruction, unless the possessor could show lawful possession upon his day in court, and the defendant not having shown that the premises was a private dwelling, and not having shown that there was any invasion of his constitutional rights in obtaining evidence of his alleged unlawful possession of the intoxicating liquors and property used in connection with the manufacture and possession thereof, the defendant must fail in his third contention.

■ Even if the defendant had shown that the prohibition agent had entered upon the land connected with the building, and while on such private ground of the defendant obtained the evidence upon which the search warrant was issued, the evidence was not illegally obtained, and the search warrant was not invalid.

The case of Hester v. U. S., reported in 265 U. S. 57, 44 S. Ct. 445, 446, 68 L. Ed. 898, is a most interesting and illuminating case upon the point now under discussion. Hester was convicted of concealing distilled spirits under the Revised Statutes. The single ground of argument in the Supreme Court was the error in the District Court in refusing to exclude the testimony of two witnesses, who went upon the defendant's land without a search warrant and there discovered the commission of the crime for which the defendant was arrested and convicted. The two witnesses were revenue officers. In the Hester Case the court said:

"In consequence of information they (revenue agents) went toward the house of Hester's father where the plaintiff in error lived, and as they approached saw one Henderson drive near to the house. They concealed themselves from 50 to 100 yards away, and saw Hester come out and hand Henderson a quart bottle. An alarm was given. Hester went to a car standing near, took a gallon jug from it and he and Henderson ran. One of the officers pursued, and fired a pistol. Hester dropped his jug, which broke, but kept about a quart of its contents. Henderson threw away his bottle also. The jug and bottle both contained what the officers, being experts, recognized as moonshine whisky; that is, whisky illicitly distilled, said to be easily recognizable. * * * The officers had no warrant for search or arrest, and it is contended that this made their evidence inadmissible; it being assumed, on the strength of the pursuing officer's saying that he supposed they were on Hester's land, that such was the fact. It is obvious that, even if there had been a trespass, the above testimony was not obtained by an illegal search or seizure. The defendant's own acts, and those of his associates, disclosed the jug, the jar, the bottle, and there was no seizure in the sense of the law when the officers examined the contents of each after it had been abandoned. This evidence was not obtained by the entry into the house, and it is immaterial to discuss that. The suggestion that the defendant was compelled to give evidence against himself does not require an answer. The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's fathers' land. As to that, it is enough to say, apart from the justification, the special protection accorded by the Fourth Amendment to the

people in their persons, houses, papers in effects, is not extended to the open field. The distinction between the latter and the house is as old as the common law. 4 Bl. Comm. 223, 225, 226."

This case is referred to with approval in Olmstead v. U. S., 277 U. S. 438, 48 S. Ct. 564, 72 L. Ed. 944.

If an enforcement officer, who goes on land connected with a private-dwelling, and while there discovers the occupant violating law, may lawfully arrest, search, and seize taxable or forfeited goods without a search warrant, one who goes on such land and obtains information which he states in an affidavit on which a search warrant is issued, violates no constitutional rights of the occupant of a building on the land in which intoxicating liquors are seized in the execution of the search warrant. The admissibility of evidence obtained by the trespass on the premises, sometimes with and sometimes without a search warrant, but not an entry into the defendant's building, is also upheld in the following cases: U. S. v. McBride (D. C.) 287 F. 214; Raine v. U. S. (9 C. C. A.) 299 F. 407; U. S. v. Lindsly (D. C.) 7 F.(2d) 247; Vaught v. U. S. (9 C. C. A.) 7 F.(2d) 370; Koth v. U. S. (9 C. C. A.) 16 F.(2d) 59; Dulek v. U. S. (6 C. C. A.) 16 F.(2d) 275; Schnorenberg v. U. S. (7 C. C. A.) 23 F.(2d) 38; Schulte v. U. S. (C. C. A.) 11 F. (2d) 105; Gracie v. U. S., 15 F.(2d) 644.

A case in close analogy, except that there was no search warrant, is Vaught v. U. S. (9 C. C. A.) 7 F.(2d) 370, supra. The cases cited by defendant's counsel are without analogy, most of them being searches of private dwellings without a search warrant.

Motion denied.